UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 22 CR 153 |
| v. | |
| ROY SMART | Judge Martha M. Pacold |

**GOVERNMENT'S SENTENCING MEMORANDUM**

In less than one month in 2022, Defendant Roy Smart sold heroin to an undercover law enforcement officer four times, traded heroin in exchange for three firearms, and was found to be in possession of distribution quantities of several controlled substances and another firearm.

For the reasons discussed below, the government recommends a sentence of 130 months' imprisonment, 65 months on Count One and 65 months on Count Six, followed by a four-year period of supervised release.[1] A sentence of 130 months appropriately reflects the seriousness of the offense, defendant's history and characteristics, and the need for specific and general deterrence, and is sufficient but not greater than necessary to comply with the purposes of sentencing.

## I. BACKGROUND

With respect to Count One of the superseding indictment:

On or about March 17, 2022, at Joliet, in the Northern District of Illinois, Eastern Division, Roy Smart, defendant herein, knowing that he had previously been

---

[1] Probation recommends a sentence of 120 months, 60 months on each Count, followed by a four-year period of supervised release. PSR Sentencing Recommendation.

convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce, firearms, namely, a Glock Model 17 9mm semi-automatic pistol bearing serial number CEH359, a Glock Model 21 .45 caliber semi-automatic pistol bearing serial number DMM272, and a Sig Sauer Model P230 .380 caliber pistol bearing serial number S053510, which firearms had traveled in interstate commerce prior to the defendant's possession of the firearms; in violation of Title 18, United States Code, Section 922(g)(1).

More specifically, on March 17, 2022, defendant traveled to Joliet, Illinois, to trade twelve grams of heroin for firearms. Defendant met with several undercover law enforcement officers who displayed four firearms to defendant. Defendant picked up and examined the four firearms. Defendant then negotiated with one of the undercover officers about what he could get for the twelve grams of heroin. Defendant eventually agreed to exchange twelve grams of heroin for three firearms. Defendant selected a Glock Model 17 9mm semi-automatic pistol bearing serial number CEH359, a Glock Model 21 .45 caliber semi-automatic pistol bearing serial number DMM272, and a Sig Sauer Model P230 .380 caliber pistol bearing serial number S053510. Defendant also requested two high-capacity extended magazines for the firearms and live rounds of ammunition. Defendant then provided the undercover officers with 12 grams of heroin in exchange for the firearms. After defendant took possession of the toolbox containing the three firearms and extended magazines, he was taken into custody.

With respect to Count Six of the superseding indictment:

2

On or about March 14, 2022, at Chicago, in the Northern District of Illinois, Eastern Division, Roy Smart, defendant herein, did knowingly and intentionally distribute a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and fentanyl, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

More specifically, on or about March 14, 2022, defendant sold 47 grams of a substance containing heroin and fentanyl to an undercover law enforcement officer. On or about March 12, 2022, an undercover officer asked defendant if he would be able to purchase a "zip and a half," meaning 42 grams of heroin. The undercover officer also asked, "Could you put another 5 g's [5 grams] in the bag?" Defendant responded, "Okay, I got you." The undercover officer and defendant agreed to meet at a later time.

On or about March 14, 2022, the undercover officer met with defendant. Defendant gave a clear plastic bag containing a brownish powder substance to the officer in exchange for $4,700. Laboratory testing confirmed that the substance that defendant sold to the undercover officer weighed approximately 47 grams and contained heroin and fentanyl.

Defendant further admits that, between approximately February 17, 2022, and March 14, 2022, he made three other sales to an undercover officer: A February 17, 2022 sale of 13.6 grams of heroin and fentanyl for $2,100, a February 25, 2022 sale of 28 grams of heroin and fentanyl for $3,500, and a March 3, 2022 sale of 27.3 grams

of heroin and fentanyl for $3,500. During a search of defendant's home after his March 17, 2022 arrest, law enforcement recovered several electronic scales, small plastic bags, grinders, distribution quantities of several controlled substances, and a loaded Glock Model 19X 9mm semi-automatic pistol bearing serial number AGGL390. According to subsequent laboratory testing, the drugs seized from defendant's home included fentanyl (66.455 grams), cocaine (approximately 28.108 grams), heroin (approximately 50.9 grams), marijuana (approximately 1535.4 grams), and other narcotics (approximately 111.196 grams).

In total, defendant distributed, or possessed with the intent to distribute, approximately 116 grams of a mixture containing heroin and fentanyl, approximately 66 grams of fentanyl, approximately 28 grams of cocaine, approximately 63 grams of heroin, approximately 1535 grams of marijuana, and approximately 111 grams of other narcotics.

Prior to this extensive criminal activity, defendant was already a convicted felon, and was in fact under a criminal justice sentence for a previous firearm-related conviction when he committed the instant offenses. Specifically, he was on federal supervised release for a 2013 felon in possession conviction.

## II. THE SENTENCING GUIDELINES CALCULATIONS

The government agrees with the Probation Office's calculation of the offense level (29) and criminal history category (III). PSR ¶¶ 20-34, 41-51. Accordingly, the applicable Guidelines range is 108 to 135 months. PSR ¶ 125.

### III.    THE SECTION 3553(A) FACTORS SUPPORT A SERIOUS SENTENCE

After considering the Guidelines' range, the Supreme Court has directed that "the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). For the reasons set forth below, the government recommends defendant be sentenced to a sentence of 130 months. Such a sentence is sufficient, but not greater than necessary, to satisfy the statutory sentencing objectives of 18 U.S.C. § 3553(a).

The Court should sentence defendant to a significant term of imprisonment due to the seriousness and extent of the charges and relevant conduct. In the span of less than one month, defendant distributed over 125 grams of heroin containing fentanyl, traded heroin for three firearms, two high-capacity extended magazines, and ammunition, and possessed even more narcotics and a firearm. This was not an impulsive scheme. To the contrary, it was well planned and extensive, requiring a lot of logistics, including multiple communications and in-person meetings.

The Court should also sentence defendant to a serious term of imprisonment because neither his prior convictions nor multiple arrests have done anything to deter him or convince him to live a law-abiding life. Prior to the charges in this case, defendant had been convicted of the following: manufacture/delivery of cannabis (1999); armed robbery (2003); manufacture/delivery of a controlled substance (2005); possession of cannabis (March 2009); possession of cannabis (December 2009); and being a felon in possession of a firearm (2013). PSR ¶¶ 43-48.

None of defendant's prior sentences of incarceration, including nine years for armed robbery, four years for manufacture/delivery of a controlled substance, and eight years for felon in possession, deterred him. He had also been arrested numerous times for related offenses, including possession of cannabis, possession of a controlled substance, manufacture/delivery of a controlled substance, felon in possession of a firearm, and reckless discharge of a firearm. PSR ¶¶ 57, 60, 62, 63, 65, 67, 69, 70, 71, 73, 74, 75. Defendant's other arrests include arrests for violent offenses, including aggravated assault, aggravated battery, armed robbery, and aggravated vehicular hijacking. PSR ¶¶ 54, 55, 60, 72. None of those experiences served to dissuade him from executing the crimes here. Instead, defendant committed the instant offenses while on federal supervised release for his 2013 felony conviction. *Id.* at ¶¶ 48, 50. Accordingly, any term of imprisonment should be at least 130 months, which would be his longest custodial sentence to date, in an attempt to convince defendant that he too needs to follow the law. The Court should also sentence defendant to a significant term of imprisonment to deter others who choose to engage in repeatedly selling narcotics, and to possess firearms in order to protect their narcotics and the proceeds therefrom.

The government recognizes the mitigating factors in defendant's life, including his parents' substance abuse issues and the lack of a paternal figure. PSR ¶ 77. But these factors, even combined with his acceptance of responsibility, do not outweigh defendant's repeated engagement in selling narcotics and possessing firearms.

Defendant's actions, along with his history and characteristics, and the need for both specific and general deterrence, warrant a serious sentence of incarceration.

## IV. THE LENGTH AND CONDITIONS OF SUPERVISED RELEASE

The government agrees with the terms and conditions recommended by Probation. PSR at 25-31.

## V. CONCLUSION

For the reasons stated, the government respectfully requests that the court impose on the defendant a sentence of 130 months' imprisonment, consisting of 65-month sentences on Counts One and Six (to run consecutively), to be followed by a four-year term of supervised release, and a special assessment of $200.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: */s/ Megan E. Donohue*
MEGAN E. DONOHUE
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1877